# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# CHARLESTON DIVISION

UNITED STATES OF AMERICA,
ex rel. CORTNEY TAYLOR,

           Plaintiff,

v.                                                 CIVIL ACTION NO. 2:17-cv-04213

MICHAEL J. BOYKO, M.D., et al.,

           Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant Martin Gottlieb & Associates, LLC's Motion to Dismiss* (Document 53), *Defendant Martin Gottlieb & Associates, LLC's Memorandum in Support of Its Motion to Dismiss* (Document 54), the Relator's *Memorandum in Opposition to Defendant, Martin Gottlieb & Associates, LLC's Motion to Dismiss* (Document 73), and Defendant Martin Gottlieb & Associates' *Response to Plaintiff's Memorandum in Opposition to Defendant, Martin Gottlieb & Associates, LLC's Motion to Dismiss* (Document 77).

In addition, the Court has reviewed *Defendants Michael J. Boyko, M.D.; Mark Perni, D.O.; BestPractices of West Virginia, Inc.; BestPractices, Inc.; Holiday Acquisition Company, Inc.; EmCare, Inc.; and Envision Healthcare Corporation's Motion to Dismiss* (Document 56), *Defendants Michael J. Boyko, M.D.; Mark Perni, D.O.; BestPractices of West Virginia, Inc.; BestPractices, Inc.; Holiday Acquisition Company, Inc.; EmCare, Inc.; and Envision Healthcare Corporation's Memorandum in Support of Their Motion to Dismiss* (Document 57), the *Plaintiff's*

*Memorandum in Opposition to Defendants Boyko, Perni, BestPractices of West Virginia, BestPractices Inc., Holiday Acquisitions Company, Inc., EmCare, Inc. and Envision Healthcare Corporation's Motion to Dismiss* (Document 74), and *Defendants Michael J. Boyko, M.D.; Mark Perni, D.O.; BestPractices of West Virginia, Inc.; BestPractices, Inc.; Holiday Acquisition Company, Inc.; EmCare, Inc.; and Envision Healthcare Corporation's Reply Memorandum in Support of Their Motion to Dismiss* (Document 78). For the reasons stated herein, the Court finds that Defendant Gottlieb's motion should be granted, and that the remaining Defendant's motion should be granted in part and denied in part.

## FACTUAL ALLEGATIONS

The Relator, Cortney Taylor, initiated this action pursuant to the False Claims Act (FCA) on behalf of herself and the United States with a *Complaint for Violations of the False Claims Act, 31 U.S.C. § 3729, et seq.* (Document 1) filed on October 25, 2017. The complaint remained sealed until September 6, 2018. Ms. Taylor named the following Defendants: Michael J. Boyko, M.D., Mark Perni, D.O., BestPractices of West Virginia, Inc. (BPWV), Martin Gottlieb & Associates LLC (Gottlieb), BestPractices, Inc. (BP), Holiday Acquisition Company, Inc., EmCare, Inc., and Envision Healthcare Corporation. She seeks to recover damages and penalties on behalf of the United States arising from alleged false claims made by the Defendants.

BPWV contracted to manage the Camden-Clark Medical Center (CCMC) emergency department. Dr. Boyko was employed by BPWV and served as a physician at CCMC. Dr. Perni was a *locum tenens* physician who was providing medical services at CCMC on August 2, 2012, although he had not signed the contract governing BPWV's relationship with CCMC. Because Dr. Boyko was not scheduled to work on August 2-3, 2012, the Relator alleges that it was not

2

permissible for Dr. Perni to take his place for billing purposes. Jennifer Angelilli was a nurse practitioner employed by BPWV and working at CCMC. She also had not signed the contract. Her credentials to practice as a nurse practitioner required that she be supervised by a physician. She did not have a supervising physician at CCMC.

BPWV's state corporate license to conduct business and medical license were revoked on November 1, 2011, due to failure to file an annual report and filing fee. BPWV continued to operate the emergency department of Camden-Clark Medical Center following the license revocations until March 2013, including submitting claims for reimbursement to Medicare for at least 25,000 patients. Neither BPWV nor Dr. Boyko notified CMS (Centers for Medicare & Medicaid Services) of the license revocations.

Ms. Taylor received treatment for post-caesarean section abdominal pain at the CCMC emergency department on August 2–3, 2012. She is a Medicare beneficiary, and claims for her care were submitted to Medicare for payment. Her medical records list Dr. Perni as her attending physician and Ms. Angelilli as providing additional care. Ms. Angelilli diagnosed Ms. Taylor with cellulitis, then documented that her condition had improved and that she was stable prior to discharging her with a prescription for antibiotics around 4:00 a.m., on August 3, 2012. Dr. Perni did not make entries on the medical record until approximately two hours after Ms. Taylor had been discharged. He did not provide her with medical care but signed her record for billing purposes, completing an "Attending Note" box to "[permit] a provider to bill at a higher level of care because a physician was involved." (Compl. at ¶ 143.) Ms. Taylor sought additional treatment on August 3, 2012. She was diagnosed with necrotizing fasciitis, a potentially fatal condition, and transferred to West Virginia University for surgical intervention and treatment on

August 4, 2012.[1]  Gottlieb, which provided billing services for the other corporate defendants, prepared an invoice for Ms. Taylor, billing $668 with a code applicable to severe, life threatening, presenting problems.  The invoice included a code modifier to reflect the provision of services by a *locum tenens* physician in place of the regular physician, since Dr. Perni was replacing Dr. Boyko during Ms. Taylor's visit.  However, Dr. Boyko had never been scheduled to work on that date.  Gottlieb submitted the invoice for payment, but "made no references to services being provided only by Ms. Angelilli in its preparation and submission of billing documents to Medicare or Medicaid."  (*Id.* at ¶ 110).  Medicare reimbursed BPWV at the full physician rate.

In the complaint, the Relator alleges that each Defendant is liable for FCA violations.  She alleges two types of false claims: submission of claims despite the revocation of BPWV's business and medical licenses, and upcoding to improperly bill at a physician rate when no physician provided patient care.  She alleges that each Defendant presented, or caused to be presented, false claims for payments, and that each Defendant knew, was deliberately ignorant of, or recklessly disregarded the facts demonstrating the impropriety of the claims.  In short, the Relator alleges that BPWV, BP, and Gottlieb were involved in creating the reimbursement claims forms presented to Medicare, while Envision, EmCare, and Holiday caused Gottlieb to submit the false claims "through their ownership structure and control of BP, and BP's direct or indirect contractual arrangements with Camden-Clark, BPWV, and Gottlieb." (*Id.* at ¶ 124.)  Dr. Boyko and Dr. Perni are alleged to be responsible because of their roles in creating the medical records underlying the billing claims.  The Relator seeks judgment in the amount of three times the amount of

---

1 Ms. Taylor brought a medical malpractice action in state court as a result of the misdiagnosis.

damages, civil penalties, payment to the Relator of thirty percent of the proceeds, expenses, and attorneys' fees and costs.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading. *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

Rule 9(b) of the Federal Rules of Civil Procedure requires that a party alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake," although allegations related to state of mind "may be alleged generally." "To satisfy Rule 9(b), a plaintiff asserting a claim under the [False Claims] Act 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the

5

misrepresentation and what he obtained thereby.'" *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 379 (4th Cir.2008)). The Fourth Circuit cautions courts to "adhere[] firmly to the strictures of Rule 9(b) in applying its terms to cases brought under the Act," explaining that "[t]he multiple purposes of Rule 9(b), namely, of providing notice to a defendant of its alleged misconduct, of preventing frivolous suits, of eliminating fraud actions in which all of the facts are learned after discovery, and of protecting defendants from harm to their goodwill and reputation are as applicable in cases brought under the Act as they are in other fraud cases." *Id*. at 456 (internal quotation marks and citations omitted).

When reviewing a motion to dismiss, the Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

## DISCUSSION

The Defendants argue that the complaint does not contain factual allegations sufficient to establish that BPWV's license revocations would have been material to Medicare's evaluation of claims. The Defendants cite cases finding that similar regulatory and licensure violations were not predicates to FCA liability and note that "Taylor does not allege that Medicare has ever denied payment of a claim because of the expiration or revocation of an entity's state corporate business license." (Boyko et al. Mem. at 12.) They further assert that the complaint "does not allege that defendants knowingly violated 42 C.F.R. § 424.510 or 42 C.F.R. § 424.516(a), or that defendants knew that those violations were material to Medicare payment decisions." (*Id.* at 13.) They note that the complaint "alleges that the notice of revocation of BPWV's business license was mailed to the corporate president of BP" but not that any party had knowledge of the revocation or "knew that not renewing the business license would result in the submission of false claims to Medicare." (*Id.*) They further argue that there are no factual allegations supporting an inference that the failure to renew the business license was part of a scheme to defraud federal healthcare programs, rather than simply negligent business management. As to the upcoding allegations, the Defendants argue that Ms. Taylor's care was billed correctly, and the complaint does not contain particularized allegations of presentment of any other claims involving alleged upcoding. Finally, the Defendants argue that Envision, EmCare, and Holiday must be dismissed because FCA liability cannot be based solely on their corporate relationships with CCMC, BPWV, and Gottlieb.

Defendant Gottlieb filed a separate motion to dismiss, presenting largely similar arguments. In addition, it argues that the Relator did not allege specific actions or omissions by Gottlieb "that would have impacted Medicare's reimbursement of the claim," and improperly

7

relies on Gottlieb's contractual relationships to assert liability. (Gottlieb Mem. at 1.) It argues that there are no factual allegations to support the conclusion that it had knowledge of any violations or that any violations were material. Gottlieb further asserts that the billing codes used for Ms. Taylor's care were proper, and any impropriety was the result of incorrect information conveyed to Gottlieb of which Gottlieb had no knowledge or control.

The Relator argues that the complaint is clearly pled and the motions to dismiss rely on factual disputes that cannot be resolved at this stage. She argues that revocation of BPWV's license to practice medicine "is by no means a technicality," but a "regulatory requirement with the force of law." (Relator Resp. at 8.) She stresses that "requirements of a license are express conditions to be met and the subsequent failure of which must be reported, and…the requirement is that the biller be licensed and authorized to legally do the very thing for which they are billing." (*Id*. at 14.) Likewise, she argues that upcoding to misleadingly represent that a doctor provided care materially impacts payments. She further contends that scienter is adequately alleged, based on receipt of legal notice of the license revocation and existence of contractual violations. The Relator argues that "while [she] cannot be expected to have, and does not have, all of BPWV's billings during the relevant time period, she has, and has alleged, enough information to easily reach the conclusion that many additional false claims were made." (*Id*. at 21.) She specifically references her allegation that Dr. Perni admitted to routinely endorsing medical records for billing purposes when he did not see patients. Finally, she argues that, should the Court find the complaint to be deficient in any respect, she should be permitted to amend.[2]

---

2 No motion to amend has been filed in accordance with Federal Rule of Civil Procedure 15, Local Rule 7.1, and the Court's *Scheduling Order* (Document 80). Therefore, the Court will not further address the parties' discussions regarding amendment contained within the briefing.

### A. License Revocations

The Court will first address the allegation that BPWV's license revocations, as well as failures to fully comply with the terms of BPWV's contract with CCMC, rendered all claims issued to Medicare, during the applicable time period, to be fraudulent or false. The Supreme Court addressed the application of the FCA to the cases brought under the "false certification theory" in a 2016 case. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995 (2016). The Court found that "liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly fails to disclose the defendant's non-compliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading." *Id*. The Supreme Court held that the misrepresentation must be material to the Government's payment decision to be actionable and described a 'rigorous' materiality standard. *Id*. at 1996. It explained that "the Government's decision to expressly identify a provision as a condition of payment is relevant, but not automatically dispositive" in evaluating materiality. *Id*. at 2003. "[P]roof of materiality can include, but is not necessarily limited to, evidence that the defendant knows that the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement." *Id*. at 2003-4. The Supreme Court specifically contemplated that courts would consider materiality at the motion to dismiss or summary judgment stage, noting that "False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by…pleading facts to support allegations of materiality." *Id*. at fn. 6.

In *Escobar*, a Medicaid beneficiary received counseling services that the provider billed to Medicaid. Several of the practitioners who treated her, as well as other practitioners at the facility, were unqualified, unlicensed, and unsupervised, yet provided counseling and prescriptions in violation of regulations to the contrary. The providers "misrepresented their qualifications and licensing status to the Federal Government to obtain individual National Provider Identification numbers" in order to qualify for reimbursement, and the facility submitted reimbursement claims applicable to services its employees were not qualified to provide. *Id.* at 1997. The Supreme Court approved the theory of liability but remanded for the lower courts to determine in the first instance whether the relator adequately stated a claim, including issues of materiality and scienter. The First Circuit concluded that the alleged misrepresentations in *Escobar* were material, reasoning that regulatory compliance was a condition of payment, that licensing and supervision were central requirements, and that there was no evidence that the government paid claims despite knowing of the violations. *United States ex rel. Escobar v. Universal Health Servs., Inc.*, 842 F.3d 103, 110 (1st Cir. 2016).

The Fourth Circuit applied *Escobar* in *United States v. Triple Canopy, Inc.*, a case involving false certifications that security guards hired to provide base security in an overseas combat zone met a marksmanship requirement. 857 F.3d 174, 179 (4th Cir.), *cert. dismissed*, 138 S. Ct. 370 (2017). The court concluded that "common sense and Triple Canopy's own actions in covering up the noncompliance" demonstrated that the marksmanship requirement was material. *Id*. In addition, the court noted that "the Government did not renew its contract for base security with Triple Canopy and immediately intervened in the litigation," further establishing that the "falsehood affected the Government's decision to pay." *Id*.

10

West Virginia law requires corporate entities like BPWV to file an annual report and pay a fee to maintain business and medical licenses. Maintaining such licenses, in turn, is required to manage a medical facility. Medicare and Medicaid require entities and individuals seeking reimbursement to follow all applicable laws and regulations and to inform CMS of any change in licensure status. BPWV had the required licenses when it entered into its initial contract to manage the CCMC ER, but the licenses were revoked when it failed to file the required paperwork and pay the fee. It continued to manage the ER and submit reimbursement claims without notifying CMS of the license revocations.

Contrary to the facts in *Escobar*, the regulatory violation and licensing issue here was not "central" to the services provided to patients and reimbursed by Medicare. BPWV's failure to maintain its business and medical licenses brought it out of compliance with the regulations, but there are no allegations that BPWV's license status impacted the core medical services provided to patients and reimbursed by Medicare or the qualifications of the medical personnel providing care at CCMC. The Relator relies only on the regulatory requirements and violations of BPWV's contract with CCMC. She does not allege that CMS has refused to pay claims in similar circumstances or that the Defendants had knowledge of such refusals of claims. The United States declined to intervene in this matter. None of the additional factors cited in *Escobar* or *Triple Canopy* are alleged in this case. Accordingly, applying the standards set forth in *Escobar*, together with the "common sense" approach propounded in *Triple Canopy*, the Court finds that the complaint does not sufficiently allege materiality as to the false certification theory based on BPWV's license revocations.

The Relator's allegations regarding scienter likewise fall short. The complaint is problematic in two respects: First, the Relator treats the Defendants collectively, and does not assert facts to support any allegation or inference that any Defendant other than BPWV or BP had any way of knowing of the license revocations. The complaint alleges that notice was mailed to Dr. Thom A. Mayer, the Chief Executive Officer of BP and the President and sole shareholder of BPWV. There are no factual allegations to support an inference that any other Defendant had knowledge of the licensure status, beyond the bare assertions that each Defendant acted knowingly, in deliberate ignorance, or with reckless disregard. Rule 9(b) permits knowledge to be alleged generally, but scienter remains a rigorous inquiry requiring evaluation of the factual allegations and permissible inferences. *United States v. Comstor Corp.*, 308 F. Supp. 3d 56, 88 (D.D.C. 2018), *reconsideration denied sub nom. United States ex rel. Folliard v. Comstor Corp.*, No. CV 11-731 (BAH), 2018 WL 5777085 (D.D.C. Nov. 2, 2018).

Secondly, the Relator's theory requires an inference that the Defendants were aware that the licenses had been revoked, were aware that Medicare would refuse to pay any claims for treatment at the CCMC ER if it knew of those license revocations, and chose to defraud Medicare rather than file the proper paperwork with the State of West Virginia and pay a nominal fee. This is not a case in which a defendant received a significant benefit by failing to comply with the applicable regulation or contract term by relying on unqualified personnel or failing to perform claimed services altogether. The allegations presented do not plausibly lead to the conclusion that the Defendants *knowingly* chose to submit false claims, rather than spending a few minutes and a few dollars to renew BPWV's business and medical licenses. The reasonable inference arising from the factual allegations contained in the complaint is that BPWV and BP acted negligently in

failing to complete required paperwork. Because the Relator did not state sufficient allegations regarding materiality or scienter, the Court finds that the Defendants' motions to dismiss must be granted as to the implied false certification allegations.

### B. Upcoding Allegations

The Relator next alleges that the Defendants improperly billed services provided solely by a nurse practitioner at a physician rate. The Defendants contend that there are circumstances in which the physician rate is properly applicable to services provided by a nurse practitioner. The Relator alleges that she discovered that Medicare was billed for her ER visit using a code applicable to care provided by a physician for a problem of high severity. She alleges that she actually saw only a nurse practitioner, who diagnosed her with cellulitis and discharged her with a prescription for antibiotics. She further alleges that Dr. Perni testified during her medical malpractice action that he signed her medical chart as her Attending Physician only for billing purposes but was not responsible for her care.[3]

It is well-established that upcoding, or billing for a more expensive service than that provided, is a type of fraud that may be remedied by the FCA. *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 779 (7th Cir. 2016) (the "complaint sufficiently alleges that the defendants misused a billing code and falsely represented to the state and federal governments that a certain treatment was given by certain medical staff when in fact it was not."); *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 498, fn. 2 (6th Cir. 2007) (describing upcoding as "a common form of Medicare fraud."). Defendant Gottlieb cites regulations

---

3 The Relator also alleges that it was improper for Dr. Perni to bill as a *locum tenens* provider because Dr. Boyko was not originally scheduled to work on the date in question. Because she has not pled any facts suggesting that the scheduling arrangements of the physicians would be material to payment, the Court will not further address that issue.

13

permitting services provided by a nurse practitioner to be billed at the physician rate if they were 'incident to' the service of a physician. (Gottlieb Mem. at 3, citing 42 C.F.R. § 410.26(b)). Both motions to dismiss suggest that the Relator's claims rely on her subjective interpretation of the billing regulations.

Accepting the Relator's factual allegations as true, the nurse practitioner did not provide treatment incident to the services of a physician when she treated Ms. Taylor. Ms. Taylor was not seen by a physician at all, and Dr. Perni did not consider himself responsible for her care. He signed her medical records after she had been discharged. He admitted that he filled out the medical record in a manner designed to ensure Ms. Taylor's care would be billed at the full physician rate, and that he did so only for billing purposes. There is no reasonable interpretation of the regulations that would permit billing for care provided by a physician under the facts presented. Under these alleged facts, the Court finds that the Relator has adequately alleged that Dr. Perni knowingly created a false record material to a false or fraudulent claim made to Medicare.

However, the Relator's allegations fall short as to the remaining Defendants. Particularly in light of the Rule 9(b) standard, the complaint does not contain factual support for the conclusory allegations that the remaining Defendants knew that the medical records were false. Gottlieb received the medical records as generated by Dr. Perni, and the complaint itself alleges that completing the attending physician box on the record "permits a provider to bill at a higher level of care because a physician is involved." (Compl. at ¶ 143.) There are no factual allegations suggesting that any other Defendant had any involvement in the creation of Ms. Taylor's medical record or the generation and presentation of the claim to Medicare based on those records. Likewise, there are no factual allegations suggesting that any other Defendant had any knowledge

of the truth or falsity of the information contained in the medical record and resulting claim. Therefore, the claims related to Ms. Taylor's medical bills must be dismissed as to all Defendants except Dr. Perni.

The Relator asserts that the Defendants engaged in a practice of upcoding. Such schemes, including the presentment of false claims, must be alleged with particularity. The Fourth Circuit has held that "an FCA plaintiff must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). Further, "liability under the Act attaches only to a claim actually presented to the government for payment, not to the underlying fraudulent scheme," and therefore, alleging the contours of a scheme without the specifics of the claims is generally insufficient. *U.S. ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 456 (4th Cir. 2013). The court held that "when a defendant's actions, as alleged and as reasonably inferred from the allegations, *could* have led, but *need not necessarily* have led, to the submission of false claims, a relator must allege with particularity that specific false claims actually were presented to the government for payment." *Id.* at 457 (emphasis in original).

The complaint contains no details as to any false claim other than the bill for Ms. Taylor's care. The regulations regarding the appropriate billing codes are complex and proper billing turns on the facts of each case. There are no factual allegations regarding the time or the contents of any false representations in other medical bills, nor are there specific allegations regarding the identity of the individuals allegedly making such false claims. The heightened pleading standard is designed to eliminate actions in which such facts can be learned only through discovery. The

Court cannot reasonably infer from the allegations in the complaint that additional false claims were *necessarily* presented for payment. Because allegations of any false claims based on upcoding for patients other than Ms. Taylor rely on speculation, the Court finds that the motions to dismiss must be granted as to such claims.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Martin Gottlieb & Associates, LLC's Motion to Dismiss* (Document 53) be **GRANTED** and that *Defendants Michael J. Boyko, M.D.; Mark Perni, D.O.; BestPractices of West Virginia, Inc.; BestPractices, Inc.; Holiday Acquisition Company, Inc.; EmCare, Inc.; and Envision Healthcare Corporation's Motion to Dismiss* (Document 56) be **DENIED** as to the claim, asserted in Count Two, that Dr. Perni made, used, or caused to be made or used, a false record as to the medical records associated with the Relator's August 2-3 emergency room visit, and **GRANTED** as to all other claims and all other Defendants.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 7, 2019

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA