# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,
ex rel. CORTNEY TAYLOR,

                Plaintiff,

v.                                  CIVIL ACTION NO.   2:17-cv-04213

MARK PERNI, D.O,

                Defendant.

### MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendant Mark Perni, D.O.'s Motion for Summary Judgment* (Document 156), *Defendant Mark Perni, D.O.'s Memorandum in Support of Motion for Summary Judgment* (Document 157), the *Relator's Response in Opposition to Defendant Mark Perni, D.O.'s Motion for Summary Judgment* (Document 170), *Defendant Mark Perni's Reply in Support of Motion for Summary Judgment* (Document 174), and all attached and separately filed exhibits and supporting declarations.   In addition, the Court has reviewed the *Relator's Motion for Summary Judgment* (Document 160), the *Memorandum in Support of Relator's Motion for Summary Judgment* (Document 161), *Defendant Mark Perni's Response in Opposition to Relator's Motion for Summary Judgment* (Document 171), and the *Relator's Reply in Support of Motion for Summary Judgment* (Document 175), as well as all attached and separately filed exhibits and supporting declarations.   For the reasons stated herein, the Court finds that the Defendant's motion must be granted and the Relator's motion must be denied.

## FACTS[1]

The Relator, Cortney Taylor, initiated this action pursuant to the False Claims Act (FCA) on behalf of herself and the United States with a *Complaint for Violations of the False Claims Act, 31 U.S.C. § 3729, et seq.* (Document 1) filed on October 25, 2017.   The complaint remained sealed until September 6, 2018.   Ms. Taylor named the following Defendants: Michael J. Boyko, M.D., Mark Perni, D.O., BestPractices of West Virginia, Inc. (BPWV), Martin Gottlieb & Associates LLC (Gottlieb), BestPractices, Inc. (BP), Holiday Acquisition Company, Inc., EmCare, Inc., and Envision Healthcare Corporation.   The Court granted motions to dismiss with the exception of a single claim against Dr. Perni on June 7, 2019.   Ms. Taylor filed an *Amended Complaint for Violations of the False Claims Act, 31 U.S.C. § 3729, et seq.* (Document 101) on September 17, 2019.   The Court again granted motions to dismiss with the exception of the claim against Dr. Perni.

Dr. Perni worked at Camden Clark Medical Center (CCMC) as a *locum tenens* physician on various occasions between 2004 and 2012.   He contracted with Weatherby Locums, Inc., and was paid an hourly rate by Weatherby.   Weatherby negotiated contracts with hospitals in need of additional coverage on specific dates, and Dr. Perni chose whether to accept a placement at a specified hourly rate.   BestPractices of West Virginia (BPWV) staffed the ER at CCMC, and in addition to direct employees, it obtained the services of Dr. Perni and others through Weatherby to ensure shifts were covered.   Dr. Perni accepted a shift at CCMC on August 2 – 3, 2012.

Ms. Taylor went to the ER at CCMC late in the evening on August 2, 2012, because she was experiencing severe abdominal pain following the birth, by cesarean section, of her daughter

---

[1] The facts herein are drawn from the evidence submitted by both parties with respect to both motions.   Most of the facts are not in dispute, and the Court has noted information that is disputed or drawn only from individual testimony.

a few days earlier.   Jennifer Angelilli, a nurse practitioner, provided care, including intravenous antibiotics and pain medication, and diagnosed Ms. Taylor with cellulitis.   She recommended that Ms. Taylor be admitted.   Ms. Taylor had a doctor's appointment scheduled the next day and requested to be released to go home to her newborn.   Ms. Angelilli agreed to discharge her with a prescription at around 4:00 a.m., on August 3, 2012.   Ms. Taylor was later transferred to Ruby Memorial Hospital and diagnosed with necrotizing fasciitis, which required numerous surgeries. She brought a case in state court alleging medical malpractice, among other claims.   Much of the discovery and evidence was generated during the state proceeding.

Dr. Perni was the attending physician at the ER the night of August 2-3, 2013, but he did not examine Ms. Taylor.   Prior to the end of his shift, after she had been discharged, Ms. Angelilli presented Ms. Taylor's chart to Dr. Perni, and he reviewed her care, signed the chart, and checked a box labeled "template complete."   Signing off on charts for midlevel care providers, including nurse practitioners like Ms. Angelilli, was required at CCMC and is a common practice in the medical field.[2]   In addition to the treatment notes completed by Ms. Angelilli and Dr. Perni's signature, an "Attending Note" box appears on Ms. Taylor's chart, pictured below:



_____

[2] Each of the doctors who testified, as well as the Relator's expert, confirmed that having a physician countersign patient charts for individuals seen only by mid-level providers was a routine practice for oversight and regulatory compliance purposes.

Dr. Perni testified that when he signed off on charts for midlevel providers, he simply signed and dated the chart and checked a "template complete" box, and did not enter any other data, including in the Attending Note box.   He stated that the Attending Note box on Ms. Taylor's chart had no markings when he signed the chart, and he understood that box to be used for billing purposes, though other physicians who worked at CCMC did complete that box in at least some cases.[3]   He understood his signature to be necessary "to complete this chart for the – for purposes of billing.   It could now be submitted for billing."   (Perni 2015 Depo. at 67::20-22) (Document 156-21.)

A third-party company, Martin Gottlieb & Associates LLC, handled billing for BPWV. Dr. Perni testified that he was not aware of the identity of the company that handled billing. Beyond a vague understanding of some aspects of billing, including that physician care could be billed at a higher rate than care provided only by a midlevel, he had no knowledge of or involvement in BPWV's billing for care at CCMC.   Under his *locum tenens* relationship, he was paid a pre-determined hourly rate and the hospitals where he worked were entitled to all fees generated by his work.   He stated that he received no instruction on billing from BPWV or CCMC and had no input in how to code any specific medical record.   He had no knowledge of whether a patient's bill would be submitted to the Center for Medicare and Medicaid Services (CMS) or how such claims would be coded.

---

3 The Defendant argues that certain evidence, including depositions, taken for the state court litigation and submitted herein should be disregarded as inadmissible.   The Court has reviewed and considered all of the evidence submitted by the parties, finding that the depositions simply convey the anticipated testimony of potential witnesses, whether taken in relation to the state or federal litigation.   Thus, the depositions of Dr. Pasternak and Dr. Boyko regarding their understandings of the chart, or T-sheet, and billing practices may be considered for purposes of the motions for summary judgment, to the extent their testimony was relevant and non-speculative.

Ms. Taylor's ER visit resulted in a bill for $668.   It was coded as an urgent and complex case seen by a physician, which resulted in a Medicare reimbursement of $132.46.   According to the Relator's expert, Medicare should have reimbursed $112.59, based on an 85% reimbursement rate for care rendered only by a midlevel provider.   The Relator's expert further opined that Dr. Perni's failure to note on Ms. Taylor's chart that he did not personally see her contributed to Gottlieb's interpretation of the medical records and decision to bill at a physician rate.

## PUBLIC DISCLOSURE BAR

The Defendant argues that this matter is subject to the public disclosure bar based on a March 20, 2013 complaint filed with the Office of Health Facility Licensure and Certification (OHFLAC) by the Relator's attorney, which resulted in a publicly-disclosed Complaint Validation Survey.   The Relator argues that the Complaint Validation Survey is not a federal report, as required under the statute, and that the report did not address the issue presented in this action.

The public disclosure bar provides:

> The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--
> (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> (iii) from the news media,
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (2010).   To implicate the public disclosure bar, the disclosure "must disclose allegations or transactions of fraud or contain information from which the fraud can be

inferred."  *Citynet, LLC on behalf of United States v. Frontier W. Virginia Inc.*, No. CV 2:14-15947, 2018 WL 1582527, at *18 (S.D.W. Va. Mar. 30, 2018) (Copenhaver, J.)

The complaint, investigation, and resulting report in this case involved Ms. Taylor's care and medical records, including those related to the ER visit at issue in this case.  However, they focused entirely on asserted deficiencies in medical care.  To the extent record-keeping was examined, the complaint and investigation focused only on delays in generating records that could impact care.  Nothing in the complaint or investigation touched on billing or alleged fraud. Therefore, the Court finds that the public disclosure bar is not applicable, and the motion to dismiss on that basis should be denied.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).  A "material fact" is a fact that could affect the outcome of the case.  *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).  A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.   *Hoschar*, 739 F.3d at 169.   However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."   *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."   *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.   *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."   *Celotex*, 477 U.S. at 322–23.

7

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the nonmoving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

## DISCUSSION

The Relator argues that she is entitled to summary judgment because Dr. Perni knowingly participated in a scheme to bill midlevel care at a physician rate.[4] She argues that he understood the difference in rates for physician versus midlevel care, yet signed a chart for a patient he had not seen. He did not note in the chart that he had reviewed Ms. Angelilli's care without directly seeing the patient. According to the Relator, "Dr. Perni's signature on the Relator's chart was the key to the entire billing process that led to the submission of the false claim to CMS." (Rel. Mem. in Supp. of MSJ at 13.) In addition, the Relator contends that the marks in the Attending Note box suggest that Dr. Perni personally examined Ms. Taylor. Gottlieb then relied on the chart to generate a bill for a physician visit, and BPWV received the full physician reimbursement from

---

4 The Relator treats the Court's summation of her allegations while addressing the motions to dismiss as factual findings. (See, e.g., Relator's Resp. at 3.) Factual allegations, of course, are accepted as true at the motion to dismiss stage. That in no way converts those allegations into established facts for purposes of consideration of the motions for summary judgment, and the Court has disregarded the arguments suggesting that factual findings in an opinion resolving motions to dismiss have any bearing at the summary judgment stage.

CMS for Ms. Taylor's ER visit.  She argues that Dr. Perni's admission that he signed the chart and marked it complete "unequivocally demonstrates a conscious false statement that the Relator's T-Sheet was complete as of the time of his signature when Dr. Perni knew at the time that he made that entry and signed the Relator's T-Sheet that the Attending Note box - the critical piece of information that defines the scope of permissible billing (with billing being Dr. Perni's admitted basis for signing) - was blank."  (Rel.'s Reply at 4.)

The Defendant argues that he is entitled to summary judgment because signing the chart does not constitute a false statement, he had no involvement in billing, and did not know how Ms. Taylor's care was billed.  According to the Defendant, "regardless of whether the claim for services to Taylor was ultimately billed correctly, none of Dr. Perni's documentation on the claim is false."  (Def.'s Mem. in Supp. of MSJ at 12.)  Further, the Defendant contends that the Relator has presented no evidence of scienter.  "He does not know how bills were created, what records were used for billing, or what coding applied to medical records."  (*Id.* at 13.)  He notes that summary judgment was granted in his favor on a billing fraud claim brought in state court on the same evidence.

"The FCA [False Claims Act] imposes civil liability on persons who knowingly submit false claims for goods and services to the United States." *U.S. ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016).  "To encourage the disclosure of fraud that might otherwise escape detection, the FCA permits private individuals, denominated as relators, to file qui tam actions on behalf of the government and collect a bounty from any recovery." *Id.* Section 3729(a)(1)(B) of the FCA provides for liability and penalties for any person who

"knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."   31 U.S.C. § 3729(a)(1)(B).

"The Act's scienter requirement defines…. 'knowingly' to mean that a person has 'actual knowledge of the information,' 'acts in deliberate ignorance of the truth or falsity of the information,' or 'acts in reckless disregard of the truth or falsity of the information.'"   *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 1996 (2016).   "Material" in turn is defined as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."   *Id.* (quoting § 3729(b)(4)).   The Fourth Circuit has explained that a relator must "create a genuine issue of fact showing" the following to avoid summary judgment on false claims and false statement allegations:   "(1) that [the defendant] made a false statement or engaged in a fraudulent course of conduct; (2) that such statement or conduct was made or carried out with the requisite scienter; (3) that the statement or conduct was material; and (4) that the statement or conduct caused the government to pay out money or to forfeit money due."   *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728–29 (4th Cir. 2010).

The undisputed facts establish that Dr. Perni did not see Ms. Taylor, that he did sign her chart and check the "template complete" box, and that Gottlieb generated a bill at a physician rate and CMS reimbursed BPWV at that rate.   The Relator contends that Dr. Perni made a materially false statement when he signed her medical record and checked a "template complete" box without having filled out the Attending Note box.   The undisputed evidence from witnesses for both parties, including the Relator's expert, established that it is a routine practice to require midlevel providers to present their charts to a physician to sign off on the course of treatment when the

10

midlevel managed the patient without assistance from the physician.   Thus, Dr. Perni's signature cannot be viewed as somehow falsely implying that he personally saw the Relator during her ER visit.   That leaves only the Attending Note box, combined with the "template complete" check, as potential false statements.   Viewing the evidence in the light most favorable to the Relator, the Court finds that she has not presented sufficient evidence to proceed.

The Relator's theory of the case rests on presumption and speculation, rather than evidence. She speculates that Gottlieb relies on the Attending Note box to make billing determinations, and she presumes that Dr. Perni had some understanding of how certain notations on a chart would be interpreted for billing purposes.   There is no evidence to support her theory.   Dr. Perni was paid an hourly rate and had no involvement in billing.   There is no evidence that he received any training related to billing or coding.   There is no evidence that he filled out the Attending Note box or had any knowledge of its purpose, and there is no evidence that the ambiguous language and markings within that box caused Gottlieb to code a bill at the physician rate.[5]   There is no evidence that Dr. Perni knew Ms. Taylor received Medicare, had any input into the coding or billing for her care, or knew that a claim based on the physician rate was generated in her case.

The Relator relies heavily on Dr. Pasternak's testimony regarding his understanding of the notations in the Attending Note box on Ms. Taylor's chart.   Another doctor's interpretation of the Attending Note box in Ms. Taylor's chart is simply insufficient evidence of either the actual impact on billing or Dr. Perni's understanding and intent—particularly given that, prior to reviewing Ms.

---

5 The Court has carefully reviewed the "Attending Note" box and the notations contained therein, and finds it to be, at best, ambiguous.   The circled "NP" could indicate that a nurse practitioner interviewed and examined the patient. Because there is no evidence that Dr. Perni made those notations, how to interpret them is of little moment, but it is worth noting that a reasonable juror could not find a knowing false statement from an ambiguous checkmark and circle.

11

Taylor's chart during his deposition, Dr. Pasternak testified that he did not believe CCMC's chart indicated whether a physician had seen a patient and did not recall the Attending Note box on the charts used at CCMC during his employment.

If the question were whether CMS was overbilled for Ms. Taylor's ER visit, the Relator would have a viable claim.   However, the question presented is whether Dr. Perni knowingly made a false record or statement material to a false or fraudulent claim.   The Relator has presented no evidence that Dr. Perni made any false statement and no evidence that any overbilling resulted from anything more than a mistake.   "There is a difference between a false statement sufficient to support a claim of fraud, on the one hand, and honest disagreements, routine adjustments and corrections, and sincere and comparatively minor oversights, on the other."   *U.S. ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 734 (4th Cir. 2010).   At best, the Relator's evidence suggests a comparatively minor oversight or miscommunication between Dr. Perni, a contract physician completing a chart for purposes of patient care, BPWV as the entity staffing the ER, and Gottlieb as the third-party billing contractor.   It does not suggest any wrongdoing or intentional disregard for the truth on anyone's part, and certainly not on the part of Dr. Perni, who had no involvement whatsoever in generating the contested bill at issue.

In *Owens*, the Fourth Circuit noted:

> The impression—of a suit in search of a wrong, rather than a wrong in search of a verdict—is borne out by the fact that Owens has not produced any evidence of deceit on First Kuwaiti's part. Plaintiff's strategy seems to be to throw as many allegations as it can against the wall in the hope one of them will stick, an approach at odds with the purposes of the FCA. A litigant is not entitled to a trial simply by dint of determination.

*Id.*   The same is true in this case.   The Relator seeks to parlay her state medical malpractice suit into a federal FCA action, with allegations of fraud for every instance of negligent record-keeping

or $20 billing discrepancy, despite the state court's grant of summary judgment as to a similar billing fraud claim.   Viewed in the light most favorable to the Relator, the facts and evidence do not support her claim, and no reasonable jury could find that Dr. Perni violated the FCA based on an arguably misplaced checkmark.   Accordingly, the Court finds that the Defendant's motion for summary judgment must be granted, and the Relator's motion must be denied.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that *Defendant Mark Perni, D.O.'s Motion for Summary Judgment* (Document 156) be **GRANTED** and the *Relator's Motion for Summary Judgment* (Document 160) be **DENIED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER:        May 14, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13

14